UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Crim. No. 11-CR-138 (JEB) |
| ) | |
| IVAN NITSCHKE, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MOTION TO DISMISS COUNT ONE OF THE INDICTMENT**

Mr. Ivan Nitschke, the defendant, through undersigned counsel, and pursuant to Federal Rule of Criminal Procedure 12(b)(2), respectfully submits this Motion to Dismiss Count One of the Indictment, which charges him with attempted coercion and enticement under 18 U.S.C. § 2422(b). For the reasons stated below, the government's allegations in this case are insufficient to establish a violation of § 2422(b). Accordingly, the defense respectfully moves to dismiss Count One.

BACKGROUND

In this case, the Indictment charges Mr. Nitschke with one count of attempted coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b), and one count of travel with intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b). The government's evidence purportedly supporting Count One, which is the subject of this Motion, is straightforward and falls into two categories: (1) emails between Mr. Nitschke and the undercover law enforcement officer ("the UC"); and (2) Mr. Nitschke's travel to meet the UC at a pre-arranged location in the District of Columbia.

A.      **The Emails.**[1]

On March 24, 2011, at approximately 11:15 a.m., the UC was logged into a chat room on a social networking site conducting an undercover investigation. The social networking site is an internet dating forum for homosexual men. In order to enter the chat room, one must verify that he or she is over 18 year of age.

The "profile" the UC used in the chat room is attached as Exhibit B. The profile listed the UC's "screen name" as "DC Ped" and advertised the UC as a "No limits perv." It stated that the UC is "[l]ooking to meet other no limit pervs in DC I can usually host. I am into the more pervy and twisted minded, taboo, d/s, yng, etc...." Id.

At approximately 11:29 a.m., Mr. Nitschke sent an email to the UC. The email stated, "I like the way you think . . . . taboo, young etc. . . . party friendly too here . . . . how goes?" Ex. A at 1.[2] The UC responded, "yes, very taboo no limits with exp..." Id. at 2. After Mr. Nitschke stated "very hot buddy . . . you looking to get together to get twisted," the UC stated, "yes, getting off at 3 and meeting my lil perv boy that I met over the summer for a few hours. he is young so if that is not your thing we can hook up after he leaves." Id. at 3-4. Mr. Nitschke responded "hey bud . . . . said I was into that in my first message . . . fuck yeah . . . how old is he? You mind pnp?" Id. at 5.[3] The UC responded "yes, I do pnp he does not turning 13 this year, he is very cool, vers and freaky. to be safe if your interested I would want to hook up before he gets here and play to

---

[1]     A complete set of the emails is attached as Exhibit A.

[2]     The ellipses used in this section are reproduced from the original emails between Mr. Nitschke and the UC.

[3]     "PNP" is an abbreviation for "party and play," which is a slang term meaning to use drugs and have sex.

prove we are cool." Id. at 6. Mr. Nitschke stated, "that works for me buddy . . . . no worries . . . good to meet up before . . . just let me know where and when and I'll be there . . . . two things . . . what you like to pnp with and what does freaky mean exactly (not from states here)? Thanks perv." Id. at 7. The UC responded "no worries, he is into taking piss, and loves to be fucked and bred. Are you a top? vers? once we prove we are cool are you good with fucking his hole with me and breeding his lil hole?" Id. at 8. Mr. Nitschke replied, "top vers here . . . .yeah . . . into all that . . . . ready to join in . . . . what race is he? Oh, you missed the where, when, and pnp questions . . . . thanks." Id. at 9. The UC than responded that he was located in Chinatown and repeated that he "pnp's" but that the minor does not. Id. at 10. Mr. Nitschke responded on the logistics, and stated "happy to meet up with you as soon as you're able to . . . We meet up before so we can get a little high, play, and get to know each other . . . what do you pnp on?" Id. at 11-12. The UC then responded "Sounds good, I like T myself, you?" Id. at 13.[4] Mr. Nitschke then responded "I like to smoke what you suggested and a little Gh[b] is cool too. . ." Id. at 14. Mr. Nitschke also asked the UC whether he was a police officer. The UC responded that he was not to which Mr. Nitschke responded that was cool. Id. at 15-17.

      The UC and Mr. Nitschke then discussed arrangements to meet, including whether the UC's place was secure. Id. at 17-18. They discussed whether the UC had any "good porn we can perv out to when we first meet up." Id. at 22. The UC responded that he did have porn of "3-12," to which Mr. Nitschke did not reply immediately. Id. at 23-24. After the UC wrote "? if that is too young I won't play," Mr. Nitschke responded that he did not have any porn and noted that he was "visiting here and cannot cross borders with that." Id. at 25-26.

---

    [4]    "T" is slang for methamphetamine.

Mr. Nitschke told the UC that 3:30 pm was a good time to meet. Id. at 26. Between 1:57 p.m. and 4:12 p.m. the UC and Mr. Nitschke exchanged emails on the logistics of meeting, including a location. Id. at 27-45.

**B.    The Meeting.**

At approximately 4:30 p.m., Mr. Nitschke met the UC at the discussed location in the District of Columbia. Mr. Nitschke was arrested shortly after his arrival at the location.

## SUMMARY OF ARGUMENT

The government's position that Mr. Nitschke violated 18 U.S.C. § 2422(b) by accepting the UC's invitation to join him for sex with a fictitious minor is at odds with the plain language of the statute. Even when viewed in the light most favorable to the government, the alleged facts demonstrate at most that Mr. Nitschke traveled to meet the UC and the fictitious minor for an attempted sexual encounter.[5] Those facts are insufficient to establish that Mr. Nitschke at any time attempted to "persuade[], induce[], entice[], or coerce[]" the fictitious minor—either directly or indirectly through the UC—to engage in sexual conduct. While there may have been a substantial step towards some criminal offense here, it was not a substantial step towards violating 18 U.S.C. § 2422(b). Furthermore, the attempt the government alleges here appears to be a future attempt that would not have taken place "using the mail or any facility or means of interstate or foreign commerce," and therefore could not have violated § 2422(b) for that reason as well. Finally, the government's tortured interpretation of § 2422(b) in this case should be rejected for the additional reason that it would criminalize practically every instance of criminal sexual abuse,

---

[5]    The defense assumes an intent to have sex only for the purposes of this Motion to Dismiss. In reality, the evidence in this case is at least equally consistent with Mr. Nitschke agreeing to whatever activities the UC was suggesting in order to obtain drugs and have sex with the UC.

including sexual abuse offenses traditionally reserved for prosecution by the states.  That result is impossible to square with the plain language of the statute.  For at least the above three reasons, the government's allegations are insufficient to establish a violation of § 2422(b), and Count One must be dismissed.

## ARGUMENT

I. **EVIDENCE THAT MR. NITSCHKE INTENDED TO HAVE SEX WITH THE FICTITIOUS MINOR WITHOUT MORE IS INSUFFICIENT TO SUSTAIN A CONVICTION UNDER 18 U.S.C. § 2422(b).**

Section 2422(b), 18 United States Code, states as follows:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can he charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

Thus, to obtain a conviction under § 2422(b), "the government must show that the defendant '(i) used a facility of interstate commerce; (ii) to knowingly persuade, induce or entice, or to attempt to persuade, induce or entice; (iii) any individual who is younger than eighteen-years old; (iv) to engage in sexual activity of a criminal nature.'"  United States v. Douglas, 626 F.3d 161, 164 (2d Cir. 2010) (quoting United States v. Brand, 467 F.3d 179, 201-02 (2d Cir. 2006)).  The statute also criminalizes "attempts to do so."  18 U.S.C. § 2422(b).

To sustain a conviction for violating § 2422(b) under its attempt clause, the government must prove the following:  (1) "[w]ith regard to intent, the government must prove that the defendant intended to cause assent [to engage in sexual activity] on the part of the minor;" United States v. Lee, 603 F.3d 904, 914 (11th Cir. 2010); and (2) "that the defendant took a substantial step towards causing assent."  Id.; see generally Braxton v. United States, 500 U.S. 344, 349

5

(1991) (stating that "[f]or Braxton to be guilty of an attempted killing under 18 U.S.C. § 1114, he must have taken a substantial step towards that crime, and must also have had the requisite mens rea"); United States v. Washington, 106 F.3d 175, 197 (D.C. Cir. 1997) (to establish attempt "the prosecutor must show that the defendant 'acted with the kind of culpability' otherwise required for the commission of the crime which he is charged with attempting," and that he "engaged in conduct which constitutes a substantial step toward the commission of the crime") (quoting United States v. Mandujano, 499 F.2d 370, 376 (5th Cir. 1974))).

Mere preparation for an attempt is not enough. See United States v. Buffington, 815 F.2d 1292, 1301 (9th Cir. 1987) ("Mere preparation does not constitute a substantial step."); Mandujano, 499 F.2d at 376 ("Preparation alone is not enough, there must be some appreciable fragment of the crime committed, it must be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter, and the act must not be equivocal in nature."); United States v. Manley, 632 F.2d 978, 987 (2d Cir. 1980) ("A substantial step must be something more than mere preparation"); United States v. Monholland, 607 F.2d 1311, 1318 (10th Cir. 1979) ("The cases universally hold that mere intention to commit a specified crime does not amount to an attempt. It is essential that the defendant, with the intent of committing the particular crime, do some overt act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of the particular crime."). Instead, the defendant's alleged substantial step towards the commission of the offense "'must be necessary to the consummation of the crime and be of such a nature that a reasonable observer, viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute.'" United States v. Bailey, 228 F.3d 637, 640 (6th

Cir. 2000) (quoting Manley, 632 F.2d at 987-88).

 Importantly, the attempted conduct prohibited by § 2422(b) is <u>not</u> an attempt to have sex with a minor. "[M]ere contact for the purposes of engaging in illegal sexual activity . . . is not criminalized in 18 U.S.C. § 2422(b)." United States v. Root, 296 F.3d 122, 1230 (11th Cir. 2002) (internal quotation marks and ellipses omitted). "The underlying criminal conduct that Congress expressly proscribed in passing § 2422(b) is the persuasion, inducement, enticement, or coercion of the minor <u>rather than the sexual act itself</u>." United States v. Murrell, 368 F.3d 1283, 1286 (11th Cir. 2004) (emphasis added). In Lee, 603 F.3d at 914, the Eleventh Circuit held that to prove the requisite intent under 18 U.S.C. § 2422(b), "the government must prove the defendant intended to cause assent on the part of the minor, <u>not that he acted with the specific intent to engage in sexual activity</u>." Id. (internal quotation marks and citations omitted) (emphasis added). The court further stated that "[w]ith regard to conduct, the government must prove that the defendant took a substantial step <u>toward causing assent, not toward causing actual sexual contact</u>." Id. (emphasis added). As stated in Bailey, the intent to entice and the intent to have sex "<u>are two clearly separate and different intents and the Congress has made a clear choice to criminalize persuasion and the attempt to persuade, not the performance of the sexual acts themselves</u>." 228 F.3d at 639 (emphasis added); <u>see also</u> Murrell, 368 F.3d at 1286. As the Sixth Circuit recently noted in United States v. Hughes, 632 F.3d 956, 961 (6th Cir. 2011), "[s]ection 2422(b) . . . was designed to protect children from the act of solicitation itself—a harm distinct from that proscribed by § 2423 [which criminalizes an intent to engage in illicit sex]." <u>See also</u> *A Better Way To Stop Online Predators: Encouraging A More Appealing Approach To § 2422(B)*, 40 Seton Hall L. Rev. 691, 721 (2010) (recognizing that § 2422(b) "does not target a predator's attempt to have sex with a

7

minor; it only targets his attempt to persuade").[6]

Thus, turning back to the attempt analysis, the requisite intent under § 2422(b) is not an intent to have sex with a minor, but rather an intent to "criminal[ly] persua[de]" the minor to have sex. Bailey, 228 F.3d 637; see also Murrell, 368 F.3d at 1286 ("Combining the definition of attempt with the plain language of § 2422(b), the government must first prove that Murrell, using the internet, acted with a specific intent to persuade, induce, entice, or coerce a minor to engage in unlawful sex."). Similarly, the required "substantial step" for § 2422(b) is not a substantial step in the offense of attempting to have sex with a minor. Instead, it must be a substantial step in "knowingly persuad[ing], induc[ing], entic[ing] or coerc[ing]" the minor "using the mail or any facility of interstate commerce."[7] 18 U.S.C. § 2422(b).

The case law under § 2422(b) supports defendant's argument. The courts of appeal are in virtually unanimous agreement that the intent requirement for § 2422(b) differs from the intent requirement for 18 U.S.C. § 2423(b), which requires the intent to have illicit sex, e.g., sex with a minor. See Douglas, 626 F.3d at 164-65; Lee, 603 F.3d at 814 (collecting cases from the First, Sixth, Eighth, and Tenth Circuits); United States v. Hofus, 598 F.3d 1171, 1178 (9th Cir. 2010)

---

[6] Notably, the government has already agreed with this proposition in briefing at least one § 2422(b) case on appeal. See Brief for Appellee, United States v. Brandon Laureys, C.A. 10-3047, at 29 ("Thus, with regard to intent, under § 2422(b), the government must prove only the intent to persuade or to attempt to persuade."). It should be noted, however, that the issues raised by the instant motion are not at issue in the Laureys appeal, which has been argued but not yet decided. The issues raised herein were also not raised by the appellant in United States v. Troy Lewis, 318 Fed. Appx. 1 (D.C. Cir. 2009), an appeal involving § 2422(b). The defense has reviewed the briefs from both the Laureys and Lewis appeals and will of course provide them to the Court if requested.

[7] As set forth in part II, the defense further respectfully submits that the requisite intent must be to entice "using the mail or any facility of interstate or foreign commerce." 18 U.S.C. § 2422(b). Likewise, the "substantial step" under § 2422(b) must be a step toward an enticement that, as the statute requires, takes place using a facility of interstate commerce.

(recognizing, "like numerous other Circuits," a distinction between an intent to persuade and an intent to commit a criminal sex act; and holding that in a prosecution under § 2422(b) an intent to persuade is the requisite intent).  Accordingly, when reviewing § 2422(b) convictions upon challenges to the sufficiency of the evidence, courts have focused specifically on evidence supporting the defendant's intent to entice or coerce, as opposed to the evidence supporting the defendant's intent to have sex.

Given the statutory elements, the most common evidence supporting a § 2422(b) conviction is direct conversations—via a facility of interstate commerce—between the defendant and the minor or fictitious minor.  See, e.g., United States v. Berg, No. 09-2498, 2011 WL 1238309, at *7 (7th Cir. Apr. 5, 2011) ("The chat transcripts are clear and provide substantial evidence of Berg's attempt to persuade, induce, or entice Carrie [the fictitious minor] to participate in a variety of sexual acts" including numerous graphic proposals, promises and assurances of sexual nature); United States v. Goetzke, 494 F.3d 1231, 1237 (9th Cir. 2007) ("We agree with the Third, Sixth, and Tenth Circuits that, when a defendant initiates conversation with a minor, describes the sexual acts that he would like to perform on the minor, and proposes a rendezvous to perform those acts, he has crossed the line toward persuading, inducing, enticing, or coercing a minor to engage in unlawful sexual activity."); Hughes, 632 F.3d 956 (6th Cir. 2011) (defendant sent online communication to undercover officer posing as 14 year-old asking her to meet him at local park for sexual intercourse); United States v. Dwinells, 508 F.3d 63, 73 (1st Cir. 2007) (defendant made promises to two fictitious minors, including of money, and otherwise attempted to lure minors to his home for sex); United States v. Yost, 479 F.3d 815, 820 (11th Cir. 2007) (defendant made sexually explicit comments to undercover officer posing as a child, posted a

picture of his genitals, called her on telephone, and made arrangements to meet her so they could engage in sexual activity); United States v. Thomas, 410 F.3d 1235, 1246 (10th Cir. 2005) ("Thomas took a substantial step in an attempt to induce, entice, and persuade by writing and sending his insistent messages [to the fictitious 12-year-old girl]"); Root, 296 F.3d at 1228 (defendant's intent under § 2422(b) established by the defendant's instant messages to purported thirteen-year-old proposing various sex acts for them to perform together); Bailey, 228 F.3d at 639 (each of three minor victims testified that defendant "contacted her, urged her to meet him, and used graphic language to describe how he wanted to perform oral sex on her").

Where the communications are limited to those between the defendant and an adult intermediary, as in this case, the cases focus on other avenues of enticement. A recurring fact pattern in § 2422(b) cases is where the defendant negotiates with the adult intermediary for sexual access to the minor, such as by offering the adult (and/or the minor through the adult) things of value. See, e.g., Douglas, 626 F.3d at 162-63 (defendant told adult intermediary he would provide minor with "sex training" services without harm to minor and also repeatedly promised cash payments in exchange for access); Lee, 603 F.3d at 908-17 (defendant "repeatedly discussed whether, how, and when [the purported mother] would grant Lee sexual access to her daughters," sent adult intermediary graphic photos intended for minor girls, and also promised gifts); Murrell, 368 F.3d at 1287 ("By negotiating with the purported father of a minor [including promising to pay $300], Murrell attempted to [induce] the minor to engage in sexual activity with him."). Another factor in adult intermediary cases under § 2422(b) is whether the defendant endeavored to persuade the adult to have sex with the minor. See, e.g., United States v. Farley, 607 F.3d 1294, 1300-306 (11th Cir. 2010) ("Using the internet, [the defendant] made contact with the mother of [a

fictitious eleven-year-old child] and set out to persuade her not only to let him have sex with her daughter but also to join him in sexually violating the child;" among other things, defendant instructed mother to watch pornography with child, and sent photo of his genitals to mother for both mother and daughter to view).

In this case, as set forth below, the government's alleged evidence does not demonstrate that Mr. Nitschke attempted to persuade, induce, entice, or coerce a minor.

### A.     The Government's Evidence Does Not Establish An Intent To Entice.

The government's alleged evidence does not demonstrate the requisite intent under § 2422(b).  As discussed above, the required intent under § 2422(b) is not the intent to have sex with a minor, but rather the intent to criminally persuade the minor to participate in sexual activity. Here, there is no evidence that Mr. Nitschke sought through his communications to criminally persuade a minor, either directly or indirectly through the UC.

In contrast to the vast majority of the § 2422(b) cases, it is undisputed that Mr. Nitschke at no time believed he was communicating directly with the fictitious minor.   Mr. Nitschke accordingly did not seek to entice the fictitious minor directly.   Likewise, there is no evidence of Mr. Nitschke seeking to entice the minor indirectly through the UC.   Mr. Nitschke did not try to communicate indirectly with the minor through the UC by, for example, asking the UC to pass along a communication to the minor.   Mr. Nitschke did not make any promises to the UC or the minor via the UC, nor did he offer the minor or the UC money or anything else of value.   Mr. Nitschke did not send any photographs for the minor to view.   Mr. Nitschke did not invite the UC or the minor anywhere.   In sum, Mr. Nitschke did not say or do <u>anything</u> that would necessarily or even logically have resulted in a communication from the UC to the fictitious child.

It is also noteworthy that, as the UC presented the situation to Mr. Nitschke, the minor's

plans to meet the UC and engage in sexual activity were pre-existing facts. See Ex. A at 4 (UC reporting that he is "getting off at 3 and meeting my lil perv boy that I met over the summer for a few hours"). The minor's plans were therefore not the result of a communication from, or any other action by, Mr. Nitschke. In sum, the UC presented Mr. Nitschke with an already completed enticement crime, committed solely by the UC against the fictitious minor prior to the UC having any contact with Mr. Nitschke. Thus, because § 2422(b) "requires proof that the defendant attempted to communicate with the minor," Hughes, 632 F.3d at 961, and there is no such proof in this case, Mr. Nitschke cannot possibly be guilty of attempting to "knowingly persuade[], induce[], entice[], or coerce[]" a minor under 18 U.S.C. § 2422(b).

> B. **The Government's Evidence Does Not Establish A Substantial Step Towards The Enticement Of The Minor.**

For similar reasons, there was no substantial step towards coercion or enticement in this case. As discussed above, the emails do not reflect any substantial step in an enticement crime, as there is no effort whatsoever by Mr. Nitschke in the emails to communicate with the fictitious minor, either directly or indirectly. Furthermore, Mr. Nitschke's travel to the meeting with the UC also cannot constitute the substantial step. That is because, even assuming arguendo that the substantial step could take place other than by the means expressly designated in § 2422(b) ("the mail or any facility or means of interstate or foreign commerce")—which, for the reasons explained in Part II, it cannot—Mr. Nitschke's travel to meet the UC still would not qualify under § 2422(b). Section 2422(b) criminalizes certain communications between an adult and a minor. See Hughes, 632 F.3d at 961 (section 2422(b) "requires proof that the defendant attempted to communicate with the minor, and through that communication, transform the minor into his victim"). It makes no sense to say that physical travel to an in-person meeting is a substantial step in a crime that is

communicative in nature.  Physical travel is not a communicative act.  See Goetzke, 494 F.3d at 1237 n.4 ("the crime is persuasion, inducement, enticement, or coercion--not performing a physical act.").

Furthermore, under the law of attempt, the defendant's substantial step must be "necessary to the consummation of the crime."  Manley, 632 F.2d at 987-88; see also United States v. Spurlock, 495 F.3d 1011, 1014 (8th Cir. 2007) (defendant's conversation with purported mother of fictitious daughters "b[ore] the familiar hallmarks of criminal attempt" because, inter alia, "they were necessary to the consummation of the crime") (emphasis added).  Here, every circuit to consider the issue has held that § 2422(b) does not require any attempt at actual sexual activity, and, indeed, that an attempt to violate § 2422(b) is completed entirely through the defendant's communications, e.g., online and/or with a cell phone.  See, e.g., Goetzke, 494 F.3d at 1236 (physical proximity or travel not necessary for § 2422(b) offense, and collecting cases); Thomas, 410 F.3d at 1245 (same); Murrell, 368 F.3d at 1286 ("if a person persuaded a minor to engage in sexual conduct (e.g., with himself or a third party), without then actually committing any sex act himself, he would nevertheless violate § 2422(b)") (emphasis in original); Bailey, 228 F.3d 637 (sufficient evidence of substantial step in enticement offense where defendant sent emails to minors proposing oral sex but did not ever travel to meet girl).  The defendant's physical travel accordingly is not "necessary to the consummation of" an offense under § 2422(b), and, for that reason as well, cannot constitute a substantial step in the crime under the law of attempt.

Finally, insofar as the government believes that § 2422(b) criminalizes an alleged plan by defendant to attempt to entice the fictitious minor at a face-to-face meeting at a future point in time—i.e., once Mr. Nitschke had been introduced to the minor by the UC—that position reflects a

misunderstanding of attempts under § 2422(b).  The reason defendants in § 2422(b) cases involving fictitious minors may be guilty of attempts instead of completed crimes is <u>not</u> because the defendants were planning an enticement but did not yet have the chance to make the required illegal communication, which seems to be the government's position here.  Instead, it is because they did <u>attempt</u> the enticement through an illegal communication, but the attempt was not successful because the minors were not real.  <u>See, e.g.</u>, <u>United States v. Taylor</u>, --- F.3d ----, 2011 WL 1304918, *2 (7th Cir.) ("It's because [the purported minor] was actually an adult that the defendant was charged with and convicted of an attempt rather than a completed crime"); <u>Yost</u>, 479 F.3d at 819 ("Yost was convicted of <u>attempt</u> under the statute because no actual minors were involved") (emphasis in original); <u>United States v. Kaye</u>, 451 F. Supp. 2d 775 (E.D. Va. 2006) ("Defendant has been charged with criminal attempt under the statute since there was no actual minor involved and, as such, the offense was not completed."); <u>see also</u> <u>United States v. Meek</u>, 366 F.3d 705, 718-19 (9th Cir. 2004) ("The attempt provision here is no different than an attempted solicitation of prostitution where the criminal conduct is the knowing effort to solicit an individual for prostitution.  That the individual turns out to be a decoy undercover officer does not vitiate the criminal conduct . . .").

A plan to attempt something in the future is not an attempt at all; it is mere preparation (or perhaps, when combined with an overt act and a co-conspirator, a conspiracy).  <u>See, e.g.</u>, <u>United States v. Buffington</u>, 815 F.2d 1292, 1303 (9th Cir. 1987) (holding evidence of attempted bank robbery insufficient to constitute a substantial step because the defendants did "not take a single step toward the bank, they displayed no weapons and no indication that they were about to make an entry").  Section 2422(b) and the law of attempt criminalizes "attempt[s]," not planned future

14

attempts. 18 U.S.C. § 2422(b). Cf. Goetzke, 494 F.3d at 1237 (defendant Goetzke "sent [the minor] letters replete with compliments, efforts to impress, affectionate emotion, sexual advances, and dazzling incentives to return to Montana, and proposed that [the minor] return during the upcoming summer. In short, Goetzke made his move." (emphasis added)).

To be liable under § 2422(b), Mr. Nitschke must already have attempted to induce the fictitious minor via facilities of interstate commerce, either directly or indirectly, before arriving at the face-to-face meeting. Criminal liability under § 2422(b) cannot be predicated on an alleged "intent to attempt to entice" at some future time; the attempted enticement must have already occurred, but been prevented by a circumstance beyond the defendant's control. See Goetzke, 494 F.3d at 1237 ("To constitute a substantial step, a defendant's 'actions must cross the line between preparation and attempt by unequivocally demonstrating that the crime will take place unless interrupted by independent circumstances'" (quoting United States v. Nelson, 66 F.3d 1026, 1042 (9th Cir. 1995)). Here, Mr. Nitschke at no time attempted to persuade, entice, induce, or coerce the fictitious minor, either in person or, as required (see infra), via facilities of interstate commerce. Count One must therefore be dismissed.

**II. THE ATTEMPT TO ENTICE UNDER § 2422(b) MUST BE COMMITTED "USING THE MAIL OR ANY FACILITY OR MEANS OF INTERSTATE OR FOREIGN COMMERCE."**

Section 2422(b) unambiguously requires that the offense, or the attempted offense, occur "using . . . any facility or means of interstate or foreign commerce." 18 U.S.C. § 2422(b); see also United States v. Thomas, 410 F.3d 1235, 1245 (11th Cir. 2005) (required elements are "use of a facility of interstate commerce to knowingly persuade, induce, entice, or coerce" a minor to have sex (emphasis added)); Douglas, 626 F.3d at 164 (same); Murrell, 368 F.3d at 1286 ("Combining

the definition of attempt with the plain language of § 2422(b), the government must first prove that Murrell, using the internet, acted with a specific intent to persuade, induce, entice, or coerce a minor to engage in unlawful sex." (emphasis added)). Thus, the required intent under § 2422(b) is not an intent to entice the minor in person at a face-to-face meeting, but rather to entice, as the statute requires, using a facility or means of interstate commerce. By the same token, the substantial step in the attempt analysis must be a substantial step in enticing a minor using a facility or means of interstate commerce, such as a computer or cell phone. See, e.g., United States v. Nestor, 574 F.3d 159, 160 (3d Cir. 2009) ("The question then becomes whether [the defendant] took a substantial step toward th[e] end [proscribed by § 2422(b)], using means of interstate commerce." (emphasis added)). A substantial step toward an enticement that does not use means of interstate commerce may constitute an attempt to commit some other crime, but it does not constitute an attempt to violate § 2422(b). Id.

In light of the statutory requirement that the attempt occur using a facility or means of interstate commerce (and in addition to the other reasons stated above), the government's apparent theory that Mr. Nitschke violated § 2422(b) by "intending to attempt to entice" the minor at a future physical meeting with the UC and the fictitious minor is not tenable. The requisite intent under § 2422(b) is the intent to entice a minor using facilities of interstate commerce, and all use of those facilities ceased in this case prior to Mr. Nitschke arriving at the meeting place. For the same reason, the defendant's alleged travel to the meeting place cannot constitute a substantial step, as physically traveling from one location to another is simply not a step in illicitly communicating with a minor (or the adult intermediary) on the internet, on a cell phone, or in the mail. See id. at 161 (evidence sufficient for § 2422(b) conviction because the defendant "used means of interstate

commerce, namely the internet and telephone services, to take a substantial step towards persuading, inducing, enticing, or coercing a child to engage in sexual activity"). Thus, because there is no evidence that Mr. Nitschke attempted to entice the fictitious minor using a cell phone, the internet, or the mails, the government's allegations fail to sustain a charge under § 2422(b).

### III. THE GOVERNMENT'S INTERPRETATION OF § 2422(b) WOULD EXPAND THE STATUTE WELL BEYOND ITS EXPRESS TERMS AND FEDERALIZE PRACTICALLY EVERY CASE OF SEX ABUSE.

Section 2422(b) unambiguously criminalizes the use of facilities of interstate commerce to "knowingly persuade[], induce[], entice[], or coerce[]" a minor to have sex. 18 U.S.C. § 2422(b). As such, § 2422(b) "was designed to protect children from the act of solicitation--a harm distinct from that proscribed by [18 U.S.C.] § 2423(b)." Hughes, 632 F.3d at 961.

Under the government's tortured interpretation of § 2422(b), however, the statute does not just criminalize efforts to "persuade[], induce[], entice[], or coerce[]" a minor "using . . . any facility or means of interstate or foreign commerce," 18 U.S.C. § 2422(b), as the statute plainly states. Instead, and notwithstanding the statutory language expressly limiting § 2422(b) to illegal communications, the government would have the Court interpret § 2422(b) to criminalize <u>all</u> sexual abuse of a minor, or attempted sexual abuse, so long as a computer, cell phone, or the mail is even tangentially involved. There is no indication in the statute that Congress intended─or, given the limits of the commerce clause, constitutionally could─intervene into traditional state responsibilities for law enforcement in this manner.[8] To the contrary, the government's sweeping

---

[8] The District of Columbia, like many if not all other states, has a plethora of statutes proscribing the sexual exploitation of children. See, e.g., D.C. Code. § 22-3008 (First degree child sexual abuse) ("Whoever, being at least 4 years older than a child, engages in a sexual act with that child or causes that child to engage in a sexual act shall be imprisoned for any term of years or for life"); D.C. Code § 22-3009 (Second degree child sexual abuse); D.C. Code §

17

interpretation of § 2422(b)—and the resulting federalization of a significant number of crimes traditionally reserved for prosecution by the states—is utterly irreconcilable with the plain language of the statute.[9] It should therefore be rejected. See United States v. Albertini, 472 U.S. 675, 680 (1985) ("Courts in applying criminal laws generally must follow the plain and unambiguous meaning of the statutory language."); Garcia v. United States, 469 U.S. 70, 75 (1984) (courts are bound to a statute's language absent "extraordinary showing of contrary intent" in legislative history); see also INS v. Cardoza-Fonseca, 480 U.S. 421, 451 (1987) (Scalia, J., concurring in judgment) ("[I]f the language of a statute is clear, that language must be given effect--at least in the absence of a patent absurdity"); Caminetti v. United States, 242 U.S. 470, 485 (1917) ("Where the language is plain and admits of no more than one meaning the duty of interpretation does not arise and the rules which are to aid doubtful meanings need no discussion.").

---

22-3009.01 (First degree sexual abuse of a minor).

[9] In addition, because the government's interpretation of § 2422(b) would criminalize intrastate conduct that has been traditionally reserved to the states for prosecution, it would raise serious issues regarding the extent of Congress's power under the commerce clause. Thus, to the extent the government would argue that § 2422 is ambiguous and therefore capable of its interpretation—which it is not—that interpretation should be rejected under the doctrine of constitutional avoidance, in addition to all of the other arguments set forth above. See Ashwander v. TVA, 297 U.S. 288, 341 (1936) (as between two plausible constructions of a statute, an inquiring court should avoid a constitutionally suspect one in favor of a constitutionally uncontroversial alternative). For similar reasons, the rule of lenity would also support defendant's position here, if the Court deems the statute ambiguous. See Bifulco v. United States, 447 U.S. 381, 387 (1980).

## CONCLUSION

WHEREFORE, for the reasons stated above, the defense respectfully submits that Count One must be dismissed.

                                            Respectfully submitted,

                                      _____/s/_____
                                      David Benowitz
                                      Bar # 451557
                                      Counsel for Ivan Nitschke
                                      Price Benowitz LLP
                                      406 Fifth Street, NW
                                      Washington, D.C.   20001
                                      (202) 271-5249
                                      David@PriceBenowitz.com

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff,** | ) | |
| v. | ) | Crim. No. 11-CR-138 (JEB) |
| **IVAN NITSCHKE,** | ) | |
| **Defendant.** | ) | |

**ORDER**

Upon consideration of the defendant's Motion to Dismiss Count One of the Indictment, any opposition thereto, and for good cause shown, it is accordingly

**ORDERED** that the Motion is **GRANTED**; and it is hereby

**ORDERED** that Count One of the Indictment in this case is hereby **DISMISSED**.

**SO ORDERED.**

THE HONORABLE JAMES E. BOASBERG
UNITED STATES DISTRICT JUDGE